UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TRINA BEY,

Plaintiff,

-against-

FRANK J. BISIGNANO,

Defendant.

**MEMORANDUM & ORDER**
23-CV-444 (NRM)

**NINA R. MORRISON**, United States District Judge:

Plaintiff Trina Bey ("Plaintiff") filed this action against the Commissioner of Social Security (the "Commissioner")[1] under 42 U.S.C. § 450(g) seeking judicial review of the Social Security Administration's ("SSA") denial of her claim for disability insurance benefits and period of disability. Specifically, Plaintiff challenges the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled, in light of her severe medical impairments, including left shoulder derangement status-post multiple arthroscopic surgeries, right knee pain status post-arthroscopic surgery, and cervical and lumbar degenerative disc disease.

Both parties have filed cross-motions for judgment on the pleadings. Plaintiff seeks reversal of the Commissioner's decision, or in the alternative, remand to a

---

[1] Plaintiff's counsel sued as defendant Kilolo Kijakazi, former Commissioner of Social Security. The Clerk of the Court is respectfully directed to update the caption and docket to reflect the defendant as Frank J. Bisignano, current Commissioner of Social Security.

different ALJ. For the reasons set forth below, the Court DENIES the Commissioner's motion and GRANTS Plaintiff's motion for judgment on the pleadings. The Court has also considered Plaintiff's request that it order the Commissioner to assign the case to a different ALJ, but declines to do so. The case is remanded for further proceedings consistent with this Order.

**BACKGROUND**

**A. Procedural History**

On June 1, 2018,[2] Plaintiff — a sixty-two-year-old woman — filed a Title II application for Social Security Disability and Insurance ("SSDI") under the Social Security Act. Administrative R. ("A.R.") at 145, 160.[3] She worked as a New York City corrections officer for over fifteen years and alleged a period of disability beginning on June 1, 2016, stemming from lingering effects of a work-related accident in April 2013. *See id.* at 165, 420–22. Her application was based on the following severe physical impairments: hypertension; diabetes mellitus; left shoulder derangement status-post multiple arthroscopic surgeries; right knee pain status-post arthroscopic surgery; cervical and lumbar degenerative disc disease. *See id.* at 18.

Plaintiff's claim was first denied on November 20, 2018. *Id.* at 160, 184. On January 17, 2019, she filed a written request for a hearing before an Administrative

[2] The ALJ and Plaintiff's counsel both recognize June 1, 2018 as the date that Plaintiff initially filed her disability application. *See* A.R. at 160, 516. However, a document entitled "Application Summary for Disability Insurance Benefits" states that Plaintiff completed her application on June 8, 2018. *Id.* at 405. This discrepancy is immaterial to the Court's analysis but flagged for attention on remand.

[3] The Administrative Record is referred to by its original pagination.

Law Judge ("ALJ"), *id.* at 186, and a hearing was held on November 18, 2019, with Plaintiff and her counsel present, *see id.* at 50, 160. Medical expert Dr. James W. Todd and vocational expert Dr. Pat Green also testified at the hearing. *Id.* at 160. By decision dated January 15, 2020, ALJ Seth Grossman found that Plaintiff was not disabled under § 216(i) and § 223(d) of the Social Security Act. *Id.* at 169. Specifically, the ALJ found that Plaintiff lacked an impairment that met or medically equaled those listed in Appendix 1 to the Social Security Regulations; had the residual functional capacity ("RFC") to perform light work with certain limitations; and possessed skills transferrable to jobs "existing in significant numbers in the national economy." *See id.* at 163–64, 168–69.

Plaintiff appealed this decision on March 4, 2020. *Id.* at 251–52. In an April 14, 2020 brief to the Appeals Council, Plaintiff — by and through counsel — argued that the ALJ committed reversible error by (1) relying on vocational expert testimony "rebut[ting] the finding of disability directed by the Medical-Vocational Guidelines (Grids)" and (2) not applying the rule directing a finding of disability, after concluding that Plaintiff's "exertional level fell between two levels of the Grids, which direct opposite conclusions." *See id.* at 489–91.

The Appeals Council remanded the case back to the ALJ, directing him to:

> 1) Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the medical source opinion(s) and prior administrative medical findings pursuant to the provisions of 20 CFR 404.1520c . . . .
> 2) Obtain supplemental evidence from a vocational expert to determine whether the claimant has acquired any skills that are

> transferable, with very little, if any, vocational adjustment, to other occupations under the guidelines in Social Security Ruling 82-41.

*Id.* at 15, 176–77.

Two additional hearings were held before ALJ Grossman on remand: the first on August 2, 2021, and the second on November 4, 2021. *See id.* at 15, 118, 129. Both hearings were held by telephone due to the COVID-19 pandemic. Plaintiff did not personally appear at either hearing — although her counsel did — and the ALJ proceeded to find that she "waived her right to provide oral testimony." *Id.* at 15. The following witnesses provided testimony across both hearings: medical experts Dr. Henry Urbaniak and Dr. Michael Betten, and vocational expert Connie Standhart. *Id.*

The ALJ again held that Plaintiff was not disabled under the Social Security Act, through a written decision dated November 19, 2021. *Id.* at 27. Again, he found that Plaintiff lacked a listed impairment, had capacity to perform light work with certain limitations, and possessed skills transferrable to a significant number of jobs within the national economy. *Id.* at 19–20, 25–26.

Plaintiff appealed this decision on November 19, 2021, and requested an extension of time to submit additional evidence on December 13, 2021. *Id.* at 401–402, 404. On January 4, 2022, the Appeals Council granted Plaintiff's request for an extension of time, *id.* at 7; Plaintiff's counsel subsequently filed a brief on January 26, 2022, in support of the appeal, *id.* at 529. Plaintiff invoked the same arguments in favor of appeal as she did in her April 14, 2020 brief. *See id.* at 530–32 (arguing that the ALJ committed reversible error by relying on vocational expert testimony

that contradicted the Grids and not applying the lower Grid Rule applicable to her exertional capacity). In addition, Plaintiff argued the following: (1) the RFC of light work was not supported by substantial evidence of the record; (2) the ALJ failed to comply with Social Security Ruling 96-8p when assessing Plaintiff's RFP; (3) the ALJ failed to comply with the Appeals Council remand order; and (4) the ALJ failed to focus on Plaintiff's ability to sustain work activities. *Id.* at 532–39. She also requested that the case be assigned to a different ALJ in light of the prior reversal and proceedings on remand. *Id.* at 540.

On November 21, 2022, The Appeals Council denied Plaintiff's request for review. *Id.* at 1. Plaintiff subsequently commenced this action on January 20, 2023, arguing that the ALJ's decision was unsupported by substantial evidence and applied an erroneous legal standard. Compl. ¶ 5, ECF No. 1. Plaintiff later filed a supporting brief, captioned as a motion for summary judgment, on June 21, 2023, raising generally the same arguments as she did in her January 26, 2022 letter brief to the Appeals Council. *See generally* ECF No. 6. The Court directed Plaintiff to either re-file the document as a Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12, or to confirm that it was intended as a summary judgment motion under Fed. R. Civ. P. 56. *See* Dkt. Order dated June 22, 2023. After Plaintiff re-filed the document as a motion for summary judgment on June 22, 2023, *see* ECF No. 7 ("Pl.'s Mot."), the Court noted that it would construe Plaintiff's submission as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), *see* Dkt. Order dated June 26, 2023.

On July 18, 2023, the Commissioner filed a cross-motion for judgment on the pleadings, arguing that the ALJ applied the correct legal standards and that his findings were supported by substantial evidence. *See generally* ECF No. 9 ("Def.'s Cross-Mot."). Plaintiff replied on July 26, 2023, ECF No. 10 ("Pl.'s Reply").

**B. Medical Evidence**

The 861-page Administrative Record in this case contains opinions, evaluations, and/or medical records from a myriad of sources, including Plaintiff's treating physicians and consultative experts who examined Plaintiff for her workers' compensation and SSA claims. The relevant findings are summarized here.

*a)* *Dr. Igor Rubinshteyn*

In March 2015, Dr. Igor Rubinshteyn performed an independent orthopedic examination on Plaintiff, which formed the basis of a medical examination report to the Wokers' Compensation Board. A.R. at 586. He observed normal gait and posture, as well as normal thoracic spine, lumbar spine, and left shoulder exams — but did find a reduced range of motion in her left shoulder. *Id.* at 588–89. He concluded that Plaintiff had a twenty percent "schedule loss of use"[4] in her left shoulder. *See id.* at 589, 601–02.

*b)* *Dr. Buddhadev Manvar*

[4] A schedule loss of use determination helps determine awards under the Workers' Compensation law used to "compensate the claimant for the loss of earning ability that resulted from the permanent impairment to the body parts listed in the statute." N.Y. Workers' Comp. Law § 15 (McKinney Supp. 2023).

The administrative record contains treatment notes from Plaintiff's cardiologist, Dr. Buddhadev Manvar, dating from January 2016 to October 2019. *See id.* at 786, 791, 798, 804, 807, 813, 817, 821, 827. He consistently noted paraspinal spasms within Plaintiff's cervical and thoracic spine. *See id.* at 788, 793, 800, 806, 809, 815, 819, 823, 829.

*c) Dr. Alan J. Dayan*

The administrative record contains treatment notes and operations reports from orthopedic surgeon Dr. Alan J. Dayan — predating and postdating Plaintiff's alleged date of disability onset, when she was receiving worker's compensation following her April 2013 injury. *See id.* at 566–67, 605–10. He performed left shoulder surgery on Plaintiff on August 22, 2013, and again on September 22, 2016. *See id.* at 560, 605–06. On June 22, 2018, he also prepared a Scheduled Loss of Use ("SLU") report for the state Workers Compensation Board, concluding that Plaintiff had received a twenty percent schedule loss of use to her left shoulder. *Id.* at 543–45.

The record also contains Dr. Dayan's treatment notes, dating from January 2016 to June 2018. A.R. at 541–46, 673–75, 682–84. Plaintiff received a magnetic resonance imaging ("MRI") of her left shoulder in February 2016, which Dr. Dayan concluded showed tearing and degeneration within her tendons, as well as mild inflammation. *See id.* at 683. Dr. Dayan also examined an X-ray of Plaintiff's left shoulder in April 2017 and found that it showed no fractures or dislocation. *Id.* at 546. By January 3, 2018, Dr. Dayan concluded that Plaintiff had reached "maximum

medical improvement," and in March 2018, he concluded that Plaintiff suffered from "[s]ubjective numbness in the left upper extremity." *Id.* at 541–42.

In May 2018 and March 2019, Plaintiff received MRIs of her left shoulder and lumbar spine, respectively, upon referral from Dr. Dayan. *Id.* at 719, 757. Following her May 2018 scan, the radiologist observed tearing and degeneration within tendons in Plaintiff's shoulder, along with mild swelling in one of her joints. *See id.* at 719. In March 2019, the radiologist observed a herniated disc and disc bulging within Plaintiff's lumbar spine. *Id.* at 757.

*d) Dr. Demetrios Mikelis*

The administrative record also contains treatment notes from spine specialist Dr. Demetrios Mikelis, dating from January 2016 and December 2017 to June 2018. *Id.* at 763–773. He repeatedly noted tenderness and spasms during Plaintiff's spinal exams, and that her motor exams were not within normal limits. *See id.* at 764, 770, 772–73. He consistently instructed Plaintiff to "refrain from any activity that exacerbates symptoms such as heavy lifting, carrying or bending." *See id.* at 765, 771, 773.

The record also contains Dr. Mikelis's treatment notes between July and September 2013, all of which predated Plaintiff's date of disability onset. *Id.* at 774–83. These notes include observations of disc bulging, a herniated disc, and muscle spasms from MRI reports in July 2013. *Id.* at 775. Plaintiff also received MRIs in July and September 2017, which revealed disc bulging in her lumbar and cervical spine, and a herniated disc in her lumbar spine. *Id.* at 768.

*e) <u>Dr. Sanford R. Wert</u>*

In April 2017 and January 2018, Dr. Sanford R. Wert performed independent orthopedic examinations on Plaintiff, which formed the basis of a medical examination report to the Workers' Compensation Board. *See id.* at 701, 705–07, 710–11, 713–14, 716–17. In 2017, he observed "tenderness to deep palpation" in Plaintiff's left shoulder, and a reduced range of motion in her left shoulder, as well as her cervical and lumbosacral spine. *Id.* at 704. He concluded that Plaintiff had a "moderate partial disability." *Id.* at 705. In 2018, he again noted reduced range of motion in Plaintiff's left shoulder, as well as her cervical and lumbosacral spine — he also concluded that Plaintiff had a forty percent schedule loss of use of her left arm. *Id.* at 709–10.

*f) <u>Dr. Ranga C. Krishna</u>*

Dr. Ranga C. Krishna examined Plaintiff in November 2013, March 2014, and March 2015. *Id.* at 562–64, 739–45. In March 2014, he co-authored a report by his neurologist colleague Dr. Bhim S. Nangia, who concluded that Plaintiff had suffered a thirty-five percent loss of use to her left shoulder. *Id.* at 562–63. In March 2015, Dr. Krishna also observed functional limits to Plaintiff's sitting and lifting abilities, as well as Plaintiff's inability to crawl or kneel. *Id.* at 743.

In April and June 2018, Dr. Ranga C. Krishna performed neurological examinations on Plaintiff, and used these as the basis for Functional Capacity Evaluation reports. *Id.* at 746–53. In April, he noted that Plaintiff had an inability to lift more than five pounds; crawl, kneel, or squat; had a decreased ability for above

shoulder activities, decreased tolerance for sitting upright, and decreased range of motion in her neck and lower back. *Id.* at 748. He recommended her sitting tolerance be limited to twenty minutes, her standing tolerance limited to five minutes, and her walking limited to two blocks at a time. *Id.* at 750. After the June 2018 exam, he concluded that Plaintiff's clinical features were consistent with a seventy percent schedule loss of use in her left shoulder and that she could "only do less than sedentary work capacity." *Id.* at 752.

*g) Dr. Vinod Thukral*

Dr. Vinod Thukral performed a consultative internal medicine examination of Plaintiff on November 9, 2018. *Id.* at 637. In his musculoskeletal findings, he observed a full range of motion in Plaintiff's cervical and lumbar spine — notwithstanding mild to moderate tenderness in both — and full range of motion in Plaintiff's shoulders, elbows, forearms, and wrists. *Id.* at 640. He concluded that Plaintiff had no sitting or standing limitations, and moderate limitations to her pulling, pushing, lifting, and carrying abilities. *Id.* at 641. Dr. Thukral's notes also include reference to X-rays of the Plaintiff taken on the same date of his exam. *See id.* at 640.

*h) Dr. R. Dickerson*

On November 19, 2018, Dr. R. Dickerson performed a consultative examination of Plaintiff, and found an unrestricted range of movement in Plaintiff's shoulders, and spine. *See id.* at 150. He agreed with a light RFC based on the available medical evidence, and he concluded that Plaintiff could lift/carry twenty pounds occasionally

and ten pounds frequently; stand, sit, and walk for six hours in an average workday; push and pull without limits; and occasionally climb, balance, stoop, kneel, crouch, and crawl. *Id.* 150, 152–53. He also noted limitations on Plaintiff's ability to reach with her left arm and to her far visual acuity and concluded that Dr. Krishna's June 2018 medical opinion lacked substantial support and was "render[ed] less persuasive." *See id.* at 153–54.

*i) <u>Dr. Olga Yevsikova</u>*

Dr. Olga Yevsikova performed a consultative internal medicine examination of Plaintiff on May 10, 2019. *Id.* at 649. She observed reduced range of motion in Plaintiff's cervical and lumbar spine, as well as a full range of motion in Plaintiff's shoulders, elbows, forearms, and wrists. *Id.* at 651. She concluded that Plaintiff had "mild to moderate limitation to heavy lifting, heavy carrying, pulling, and pushing with her left arm," as well as "mild limitation to bending." *Id.* at 652. She further concluded that Plaintiff "should avoid climbing stairs frequently," but observed "[n]o limitation to walking, standing, or sitting." *Id.*

Dr. Yevsikova also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form. *Id.* at 653. She observed that Plaintiff could occasionally lift and carry up to twenty pounds; sit for four hours during an average workday (and only two hours at a time); stand or walk for two hours during an average workday (and only one hour at a time); occasionally reach, push, and pull with her left hand; occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; and never climb ladders or scaffolds. *Id.* at 653–57.

### C. Expert Medical Testimony

Three medical experts appeared at Plaintiff's SSA hearings. At her November 2019 hearing, Dr. James Todd — a non-examining internal medical expert — opined that Plaintiff could "lift and carry ten pounds frequently, with either arm, with the restriction she . . . [could not] lift more than 15 pounds above her left shoulder . . . . [f]or full range of light duty." *Id.* at 85.

During her August 2021 hearing, ophthalmologist Dr. Michael Betten testified that he was unable to find evidence of a serious eye problem within Plaintiff's medical records. *Id.* at 125.

At Plaintiff's November 2021 hearing, Dr. Henry Urbaniak — a non-examining orthopedic surgeon — reviewed Plaintiff's medical records and concluded that "there's nothing to say[] she's unable to do [] light work." *See id.* at 135 (acknowledging that Plaintiff could perform the full range of light work, in response to the ALJ's questioning). He also stated that he "ha[d] no indication to give her any restriction based on the record." *Id.* at 136.

### D. The ALJ's Decision

To be eligible for SSDI, a claimant must be found disabled within the meaning of the Social Security Act. 20 C.F.R. § 416.920; *see also* 20 C.F.R. § 416.905 (defining disability).

At step one, an ALJ considers the claimant's work activity. If a claimant is "doing substantial gainful activity," an ALJ will find the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(i).

At step two, an ALJ determines whether a claimant suffers from a "severe medically determinable physical or mental impairment." *Id.* § 416.920(a)(4)(ii). An impairment must meet the "duration requirement in § 416.909." *Id.* Unless the "impairment is expected to result in death," the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." *Id.* § 416.909. If a claimant does not have an impairment or impairments that meets the duration requirement, an ALJ will find the claimant not disabled. *Id.* § 416.920(a)(4)(ii). If the duration requirement is met, an ALJ proceeds to step three.

At step three, an ALJ determines whether a claimant's impairment "meets or equals" one of the impairments listed in appendix 1 to subpart P of part 404 of the Social Security Act (the "Listings"). *Id.* § 416.920(a)(4)(iii). If the impairment does, a claimant will be found disabled. *Id.* If a claimant's impairment "does not meet or equal a listed impairment," an ALJ must "assess and make a finding about [the claimant's] residual functional capacity." *Id.* § 416.920(e).

At step four, the RFC is considered in relation to claimant's "past relevant work." *Id.* § 416.920(a)(4)(iv). If a claimant is able to perform "past relevant work," they will be found not disabled. *Id.* If a claimant is unable to perform past relevant work an ALJ proceeds to step five.

At step five, the RFC is considered along with the claimant's "age, education, and work experience" to determine whether the claimant can "make an adjustment to other work." *Id.* § 416.920(a)(4)(v). If a claimant "cannot make an adjustment to other work" the claimant will be found disabled. *Id.*

Here, the ALJ's analysis followed the five-step evaluation framework required by 20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff had "not engaged in substantial gainful activity since June 1, 2016, the alleged onset date." A.R. at 18.

At step two, the ALJ found that Plaintiff's "hypertension, diabetes mellitus, left shoulder derangement status-post multiple arthroscopic surgeries, right knee pain status post-arthroscopic surgery, cervical and lumbar degenerative disc disease" qualified as severe medically determinable impairments that "significantly limit the ability to perform basic work activities." *Id.* The ALJ noted that, despite Dr. Dickerson's opinion regarding a limitation to Plaintiff's visual acuity, the record failed to establish a severe vision impairment. *Id.* at 18. The ALJ also classified Plaintiff's other impairments "include[ing] insomnia and headaches" as non-severe and concluded that her anxiety disorder was not a medically determinable impairment. *Id.* at 18–19.

At step three, the ALJ determined that impairments did not meet or medically equal the severity of one of the Listings. *Id.* at 19. He considered and rejected the following: Listing 1.15, disorders of the skeletal spine resulting in compromise of a nerve root; Listing 1.16, lumbar spinal stenosis resulting in compromise of the cauda equina; and Listing 1.18, abnormality of a major joint in any extremity. *Id.* at 19–20. However, he did not provide individualized explanations regarding why Plaintiff's impairments failed to meet these Listings — rather, he outlined the requirements for each listing and concluded perfunctorily that they did not apply to Plaintiff. *See id.*

The ALJ also evaluated Listing 4.00(H)(1) with respect to Plaintiff's hypertension and section 9.00 with respect to her diabetes. *See id.* at 20. He concluded that the record lacked evidence of "a specific body system" affected by Plaintiff's hypertension and of an applicable listing with respect to her diabetes. *See id.* at 20.

Because Plaintiff's impairments did not meet or medically equal the impairments in the Listings, the ALJ determined the Plaintiff's RFC to include "the full range of light work as defined in 20 C.F.R. § 404.1567(b)." *Id.* at 20. Thus, at step four, the ALJ found that Plaintiff is unable to perform any past relevant work, given that her previous work as a correction officer "is semi-skilled, medium exertional work" and in light of the vocational expert's opinion that she would be unable to perform past work "as actually or generally performed the criteria described in the [RFC]." *See id.* at 25.

At step five, the ALJ considered the Plaintiff's age (then 51 years old), high school-level education, and past work experience to conclude that she had acquired skills from past relevant work that were "transferable to other occupations with jobs existing in significant numbers in the national economy." *Id.* at 26. This conclusion followed testimony by the vocational expert, who opined that Plaintiff could perform semi-skilled, light exertional work, for instance, as a security guard, gate guard, or bailiff. *See id.* In light of this, the ALJ reached a finding of "'not disabled' . . . by direct application of Medical-Vocational Rule 202.15 and Rule 202.07." *Id.*

The ALJ then concluded that Plaintiff was not disabled as defined under the Social Security Act from the alleged onset date of June 1, 2016, through the date of the ALJ's decision on November 19, 2021. *See id.* at 26–27.

**STANDARD OF REVIEW**

Claimants who are denied disability insurance benefits by the SSA may seek judicial review. 42 U.S.C. § 405(g). When reviewing a final decision of the Commissioner of Social Security, district courts must "determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2022) (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)); *see* 42 U.S.C. § 405(g). In determining whether the SSA's findings are supported by substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence." *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted). Substantial evidence itself is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Rucker*, 48 F.4th at 91 (citation omitted), and is "more than a mere scintilla," *Biestek*, 587 U.S. at 103. If substantial evidence supports the Commissioner's findings, they are conclusive and must be upheld. 42 U.S.C. § 405(g); *see also Cichocki v. Astrue*, 729 F.3d 172, 175–76

(2d Cir. 2013). Moreover, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (citation omitted).

## DISCUSSION

Plaintiff argues that reversal or remand is warranted because: (1) the ALJ erred by relying on vocational expert testimony that contradicted the Medical-Vocational Guidelines, or "Grids"; (2) the ALJ erred by not applying the lower Grid Rule applicable to her exertional capacity; (3) the RFC of light work was not supported by substantial evidence of the record; (4) the ALJ failed to comply with Social Security Ruling 96-8p when assessing Plaintiff's RFP; (5) the ALJ failed to comply with the Appeals Council remand order; and (6) the ALJ failed to focus on Plaintiff's ability to sustain work activities. *See* Pl.'s Mot. at 11–20. She additionally argues that (1) the ALJ violated Plaintiff's due process rights by proceeding without her presence and testimony and (2) the ALJ failed to consider supportability and consistency factors from her treating physicians. *See* Pl.'s Reply at 2–10.

For the reasons set forth below, the Court grants Plaintiff's motion and remands for further proceedings because (1) the ALJ violated Plaintiff's right to procedural due process by finding that Plaintiff constructively waived her right to testify at the November 4, 2021 hearing, which the ALJ conducted by telephone during the COVID-19 pandemic, (2) the ALJ failed to adequately develop the record, and (3) the ALJ's RFC determination was not supported by substantial evidence. In light of these findings, each of which provides independent grounds for judgment on

the pleadings, the Court need not and does not reach Plaintiff's remaining claims of error.

**A. Due Process**

Plaintiff has put forward multiple arguments against the ALJ's decision that the Court would have the authority to disregard, given that they were raised for the first time in reply. *See Pamela C. v. Bisignano*, No. 24-CV-02687 (HG), 2025 WL 2917094, at *9 n.7 (E.D.N.Y. Oct. 14, 2025) ("[C]ourts have long held that arguments raised for the first time in reply papers may be disregarded") (citing *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993))). However, having reviewed the merits of Plaintiff's due process argument and finding it to be substantial, the Court opts to address it. *See id.* (choosing to address an argument raised on reply "to remove any doubt"); *T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, No. 10-CV-2843 (JG) (ARL), 2010 WL 3310262, at *4 (E.D.N.Y. Aug. 19, 2010) (choosing to "exercise [] discretion to consider [] new arguments because the other parties would suffer no unfair prejudice from [the court] doing so" (citing *Ruggiero v. Warner–Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005)); *see also Cohen v. Chater*, No. 95-CV-4461, 1997 WL 327412, at *3 (E.D.N.Y. June 9, 1997) (addressing the due process argument first because it was meritorious and dispositive).

Plaintiff argues that the ALJ violated her procedural due process rights by finding that she had waived her right to oral testimony without following SSA rules, after Plaintiff failed to appear for the November 2021 hearing. *See* Pl.'s Reply at 2–4; A.R. at 131–32. The Commissioner did not seek leave to file a sur-reply.

Claimants have a right to appear at a hearing before an ALJ to state their position and provide evidence. Thus, they are entitled to "reasonable notice and opportunity." 42 U.S.C. § 405(b); 20 C.F.R. § 416.1450(a); *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Yancey v. Apfel*, 145 F.3d 106, 112 (2d Cir. 1988) ("Generally, due process requires that a social security disability hearing must be full and fair."). Before deciding a motion for judgment on the pleadings, the Court "must first be satisfied that the claimant has had a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act. It is the Commissioner's affirmative responsibility to develop the record in such a way as to ensure a full and fair hearing." *Botta v. Colvin*, 2014 WL 524092, at *8 (E.D.N.Y. Feb. 5, 2014) (internal quotation marks omitted) (citing *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir.1990) and *Crespo v. Barnhart*, 293 F. Supp. 2d 321, 324 (S.D.N.Y. 2003)).

Plaintiff relies heavily on the SSA's Hearings, Appeals and Litigation Law Manual ("HALLEX") to argue that the ALJ failed to provide her with due process. "The Second Circuit has not yet determined whether or not HALLEX policies are binding; however, other Circuits and district courts within the Second Circuit have found that 'HALLEX policies are not regulations and therefore not deserving of controlling weight.'" *Dority v. Comm'r of Soc. Sec.*, No. 14–CV–00285 (GTS) (WBC), 2015 WL 5919947, at *5 (N.D.N.Y. Oct. 9, 2015). However, courts acknowledge that "[a]n administrative agency is required to follow its own internal policies when they accord with or are more demanding than the statute or its regulations." *Edwards v. Astrue*, No. 10-CV-1017 (MRK), 2011 WL 3490024, at *6 (D. Conn. Aug. 10, 2011); *see*

*Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) ("While HALLEX does not carry the authority of law, this court has held that 'where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required.'" (citation omitted)); *Dority*, 2015 WL 5919947, at *5.

The HALLEX instructs:

> If an appointed representative appears at a scheduled hearing without the claimant and continues to represent the claim during the hearing, dismissal is never appropriate. However, the ALJ may determine that the claimant has constructively waived the right to appear at the hearing if:
>
> • The representative is unable to locate the claimant;
>
> • The Notice of Hearing was mailed to the claimant's last known address; and
>
> • The agency has followed the contact procedures required by 20 CFR 404.938(c) and 416.1438(c), as described in HALLEX HA 01230.020.

HALLEX § I-2-4-25(D)(2) (2024). If the ALJ finds that a claimant has constructively waived their right appear at a hearing, the ALJ can choose to end the hearing or proceed, either

> accepting the testimony of [expert] witness(es) and allowing the appointed representative to question the witness(es) and make arguments on the claimant's behalf. In any event, the ALJ will advise the appointed representative, either on the record during the hearing or in writing thereafter, that they will not send an HA-L90 ["Request To Show Cause For Failure To Appear" Form] to the claimant because the claimant has constructively waived the right to appear at a hearing.

*Id.* § I-2-4-25(D)(2)(a). If there is no finding of a constructive waiver, "[t]he ALJ will advise the appointed representative that the agency will send a Form HA L-90 to the

claimant to ask why they did not appear at the scheduled hearing and whether a supplemental hearing should be held." *Id.* § I-2-4-25(D)(2)(b).

During Plaintiff's November 2021 hearing, ALJ Grossman characterized Plaintiff's absence as follows:

> And I'm going [INAUDIBLE] client that doesn't show up. Obviously, she's not interested in having the -- in -- in -- in participating, which is all right. I have no objection to that, but I'm not -- I'm not going to play games and just -- and I'm not interested in playing games. It's not going to go in [INAUDIBLE] have another hearing. It's just gone on too long.

A.R. at 131.

After Plaintiff's attorney confirmed that she had not provided testimony since the Appeals Council's remand order, counsel stated, "I apologize. I don't know what happened. I spoke to her yesterday. I told her the time, I told her that sometimes it starts late. So, I really don't know what happened . . . ." *Id.* at 132. In response, the ALJ concluded, "Okay, okay. I -- I -- I just wanted to -- and again, if you want to object, you can object. But right now, I'm just going to find that -- that she's waived the right to oral testimony. Again, that's her right to do that." *Id.* In his November 19, 2021 unfavorable decision, the ALJ held:

> The claimant agreed to appear by telephone before the hearing, and confirmed such agreement at the start of the hearing through her representatives. The claimant herself did not personally appear at any hearing scheduled in connection with this appeal, and the undersigned finds she waived her right to provide oral testimony.

*Id.* at 15.

The Court construes ALJ Grossman's comments during the hearing and subsequent written order as a finding that Plaintiff constructively waived her right

to appear at the hearing solely because she did not appear, from which he concluded that Plaintiff was "[o]bviously . . . not interested" in testifying or otherwise "participating." A.R. at 131. However, he made no findings regarding whether her representative was able to locate her; whether the Notice of Hearing was mailed to her last known address; or whether SSA followed its own procedures in attempting to contact her.

Even assuming that the hearing transcript might provide some basis to conclude that Plaintiff's attorney was unable to locate her on the day of the hearing itself, despite having spoken with Plaintiff to confirm her intended presence at the hearing — and even acknowledging that a Notice of Hearing form was sent to Plaintiff's address, *see id.* at 355–59 — the ALJ made no factual findings in that regard. In addition, the record lacks sufficient evidence to establish that SSA complied with its own contact procedures. When the SSA sends a Notice of Hearing, it includes a form HA-504, "Acknowledgment of Receipt (Notice of Hearing)." HALLEX § I-2-3-20(A) (2024). If the acknowledgement form is not returned at least thirty days before the hearing, the SSA will attempt to contact the claimant or the representative, "either by sending a written Reminder to Return Acknowledgment Form, or by telephone, asking for an explanation and whether they plan to attend the hearing." *Id.* § I-2-3-20(B) (citing 20 C.F.R. §§ 404.938(c), 416.1438(c)).

On October 7, 2021, the SSA sent a Notice of Hearing Reminder, which suggests that the acknowledgment form was not returned. *See* A.R. at 391–92; HALLEX § I-2-3-20(B) ("To generate the Reminder to Return Acknowledgement

Form, [SSA] staff will access the 'Notice of Hearing Reminder' template in the claimant's case in the Hearings and Appeals Case Processing System (HACPS) or in the Document Generation System (DGS) by selecting 'Notices' and 'Notice of Hearing Reminder.'"). The administrative record lacks evidence of a returned HA-504 acknowledgment form. It also lacks any indication that the ALJ advised Plaintiff's counsel that he would not issue a HA-L90 notice to show cause, given his constructive waiver finding. *See* HALLEX § I-2-4-25(D)(2)(a). Other courts have declined to find constructive waiver under similar circumstances. *See, e.g.*, *Dority*, 2015 WL 5919947, at *4 & n.1 (failing to find constructive notice where the "[p]laintiff's representative made no indication that she was unable to locate" the plaintiff, despite the fact that the "[p]laintiff's attorney indicated that she had recently spoken to [the p]laintiff and he gave her no indication that he was not able to attend the hearing"); *cf. Shuford v. Dudek*, No. 24-CV-268 (CWB), 2025 WL 992201, at *5–6 (M.D. Ala. Apr. 2, 2025) (describing how the ALJ did not find constructive waiver and issued a "Notice to Show Cause" in an effort to locate the plaintiff, despite the plaintiff's absence from a telephonic hearing during the COVID-19 pandemic and the ALJ noting on record that a Notice of Hearing was mailed to plaintiff's address on file); *Taylor v. Berryhill*, No. 16-CV-1375, 2017 WL 3394749, at *7 (N.D. Ohio Aug. 8, 2017) (finding constructive notice where the plaintiff indicated to counsel that he would appear at the hearing, failed to appear, the ALJ acknowledged that the plaintiff had received notice, and the record contained returned acknowledgement of receipt forms).

The Court further finds that Plaintiff was prejudiced by the ALJ's error. When determining Plaintiff's RFC, the ALJ found, "[T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, *the claimant's statements* concerning the intensity, persistence and limiting effects of these symptoms *are not entirely consistent* with the medical evidence and other evidence in the record . . . ." A.R. at 24 (emphasis added). By issuing a ruling without the benefit of Plaintiff's testimony, however, the ALJ did not give Plaintiff an opportunity to address or elaborate upon the statements he deemed "not entirely consistent" with the record. *Id.* This undermined the ALJ's ability to assess the extent of her medical limitations and properly consider Plaintiff's maximum RFC, as the Appeals Council had instructed. *See id.* at 15. And it is particularly salient in light of Plaintiff's limited ability to engage in pushing, pulling, crouching, and kneeling functions, observed by medical experts documented elsewhere in the record. *See, e.g., id.* at 640, 748. By contrast, if the ALJ had not found constructive waiver, Plaintiff would have had the opportunity to testify directly about her symptoms and their effects on her functional capacity, and for the ALJ to assess her testimony in light of the entire record. Because she was denied such opportunity as a result of the ALJ's error, she was prejudiced as a result. *See Overton v. Kijakazi*, No. 20-CV-706 (JTA), 2022 WL 906197, at *7 (M.D. Ala. Mar. 28, 2022).

The ALJ thus lacked a sufficient evidentiary basis to find that Plaintiff constructively waived her right to appear at her hearing following the remand order;

accordingly, her procedural due process rights were violated.[5] *See Mandro v. Berryhill*, No. 16-CV-1137 (JCH), 2017 WL 4071104, at *6–7 (D. Conn. Sep. 14, 2017) (finding that the plaintiff's due process rights were violated because he neither testified at his hearing nor constructively waived his right to appear); *see also Overton*, 2022 WL 906197, at *3–7 (same after finding prejudice).

Because the Court can (and does) remand this case on due process grounds, it could resolve this appeal without reaching Plaintiff's other arguments for reversal and/or remand. However, the Court is mindful that Plaintiff submitted her initial disability application in 2018, successfully appealed an initial denial of benefits, and then had extensive proceedings on remand during the COVID-19 pandemic before the same ALJ about essentially the same claim for benefits, and it is only now (in 2026) that this Court is remanding the case to the ALJ yet again. Thus, to help ensure that any proceedings on remand occur as efficiently and fairly as possible, the Court addresses two of Plaintiff's remaining claims of error that it finds are also meritorious.

**B. Failure to Develop the Record**

[5] The Court is aware that Plaintiff previously testified at her initial hearing before remand on November 18, 2019, *see* A.R. at 59–78, and that the remand order did not specifically direct the ALJ to obtain additional testimony from Plaintiff. At least one court has found that a similar history can support a finding of constructive waiver, but that was only *after* the ALJ established that the plaintiff moved without informing her counsel or providing the SSA with a current address, and further reported that she was unable to arrange transportation to the hearing. *See Carpenter v. Colvin*, No. 13–CV–859 (GLS), 2014 WL 4637085, at *3 (N.D.N.Y. Sep. 16, 2014).

The ALJ has an affirmative duty to develop the administrative record; determining whether the ALJ has satisfied this duty is a threshold inquiry for the Court. *See Wergen v. Comm'r of Soc. Sec.*, No. 20-CV-3558 (JS), 2024 WL 4107081, at *11–12 (E.D.N.Y. Sep. 5, 2024). Additionally, district courts must independently consider whether the ALJ developed the record, regardless of whether a plaintiff raises the issue. *Sanchez v. Saul*, No. 18-CV-12102 (PGG) (DF), 2020 WL 2951884, at *18 (S.D.N.Y. Jan. 13, 2020), *report and recommendation adopted*, 2020 WL 1330215 (Mar. 23, 2020). Gaps in the administrative record, including inconsistencies and vague opinions, can create a duty to further develop the record. *See Beckman v. Comm'r of Soc. Sec.*, No. 21-CV-1492 (PKC), 2022 WL 4451041, at *4 (E.D.N.Y. Sep. 23, 2022) (noting that the duty "includes re-contacting a treating physician if there exist 'obvious gaps' in the record"); *Daniela B. v. Kijakazi*, 675 F. Supp. 3d 305, 317–18 (E.D.N.Y. 2023) (finding grounds for remand because the ALJ failed to reconcile noted inconsistencies within two medical experts' opinions). Failure to adequately develop the record is an independent ground for remand. *Chapman v. Comm'r of Soc. Sec.*, No. 19-CV-1873 (PKC), 2020 WL 5763629, at *3 (E.D.N.Y. Sep. 27, 2020).

Here, the ALJ described Dr. Yevsikova's opinion as "deeply internally inconsistent" and "not congruent with her presentation in the treatment records." A.R. at 23–24. Specifically, he noted that Dr. Yevsikova "indicated that [Plaintiff] had mild to moderate limitations for heavy lifting, heavy carrying, pushing and pulling with the left arm, and mild limitations for bending, with no limitations for

sitting or standing." *Id.* at 23. But the ALJ went on to observe that "on a 'check-box' form [Dr. Yevsikova] indicated totally different limitations, including significant limitations for sitting, standing, and walking." *Id.* Dr. Yevsikova's opinion presented a gap in the record due to its significant internal inconsistencies, but the ALJ made no effort to ask the expert for clarification or seek additional information. This was error and independently warrants remand.

### C. Lack of Substantial Evidence

#### *1. No Function-by-Function Analysis*

In arguing that the ALJ's RFC determination lacked basis in substantial evidence, Plaintiff cites a 1996 Social Security Ruling ("SSR"), 96-8p — specifically to argue that the ALJ failed to "provide a narrative discussion with cites to evidence in the record for how the restrictions were derived." Pl.'s Mot. at 13; *see* Pl.'s Reply at 5. The Commissioner does not address this point directly.

SSR 96-8p states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." 1996 WL 374184, at *1 (July 2, 1996). Moreover, the ALJ

> must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.

*Id.* at *7. While the Second Circuit has not held that a failure to conduct a function-by-function analysis constitutes *per se* reversible error, it has noted that "[r]emand may be appropriate [] where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).

Here, the ALJ worked backwards: he proposed RFC classifications and sought confirmation from the medical expert's testimony. The ALJ's treatment of Dr. Urbaniak's opinion comes concerningly close to violating SSA regulations. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). In his decision, the ALJ stated that he was persuaded by Dr. Urbaniak's testimony and adopted his opinion — namely, that Plaintiff could perform the full range of light work without additional restrictions. *See* A.R. at 24. He rejected or constrained other medical opinions to the extent that they contradicted Dr. Urbaniak's opinion. *See id.* at 23 (finding Dr. Wert's opinions regarding Plaintiff's loss of use of her left shoulder unpersuasive in part because they were inconsistent with Dr. Urbaniak's opinion), 24 (adopting Dr. Todd's opinion only to the extent that it was consistent with Dr. Urbaniak's). In particular, he noted:

> Dr. Urbaniak had access to the complete record and opined within his area of orthopedic expertise that the record as a whole did not show that the claimant required any postural or manipulative erosions, and could

> perform a full range of light work, which is well supported and *more persuasive than the rest of the opinion evidence in the record.*

*Id.* at 25 (emphasis added).

Beyond arguably treating Dr. Urbaniak's opinion as controlling authority, the ALJ overstated the doctor's actual testimony. During the November 2021 hearing, Dr. Urbaniak began by summarizing Plaintiff's medical history and highlighting what he referred to as "inconsistencies" within her exams. A.R. at 133–34. After this overview, the ALJ then asked whether Dr. Urbaniak thought Plaintiff could perform medium work and proceeded to recite a definition of light work paraphrased from the SSA regulations. *See id.* at 134; SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). Dr. Urbaniak rejected a medium work classification for Plaintiff's RFC but stated that "it would appear -- or with -- or with nothing documented, that there's nothing to say, she's unable to do the light work. Put it that way." A.R. at 135. In response, the ALJ said, "And so, what you're saying is that basically she could, based upon the orthopedic examinations in the record, she could do the full range of light work. Is that correct or incorrect?" — to which, Dr. Urbaniak replied, "Well, that's a fine question. Yes." *Id.* When the ALJ asked if the full range of light work included "frequent reaching and handling and [] fingering *and all those things*," Dr. Urbaniak stated, "there's nothing in the record to say that she's unable to perform those activities." *Id.* (emphasis added).

Even if an explicit function-by-function analysis was not required, there is little to suggest that the ALJ evaluated Plaintiff's functional limitations before arriving at an RFC classification. Rather, it appears that he heard testimony of

Plaintiff's normal exams and — despite her multiple surgeries and subjective complaints — concluded that she simply did not have any. Doctors that either treated Plaintiff or performed consultative examinations on her consistently observed reaching limitations in Plaintiff's left arm. *See id.* at 85 (Dr. Todd), 153 (Dr. Dickerson), 655 (Dr. Yevsikova), 748 (Dr. Krishna). Yet the ALJ failed to inquire about this on the record or assess Plaintiff's limitations in an individualized way, opting to instead characterize Plaintiff's limitations according to the definition for light work. He also made no findings on the record regarding Plaintiff's ability to perform other physical functions — such as pushing, pulling, stooping, or crouching — or the maximum amount of each exertional activity Plaintiff in an ordinary work setting on a regular basis. Again, multiple medical opinions within the record supported pushing, pulling, crouching, and kneeling limitations, but these were unexplored. *Id.* at 640 (opinion of Dr. Thukral noting moderate limitations to Plaintiff's pushing and pulling abilities), 748 (opinion of Dr. Krishna noting Plaintiff's inability to crawl or kneel).

Because the ALJ failed to assess Plaintiff's functional limitations before arriving at an RFC determination, remand is required. On remand, the Plaintiff is entitled to an explicit function-by-function analysis of her ability to perform functional tasks that could be affected by her left shoulder status post arthroscopy, tendon tearing and degeneration, muscle spasms, herniated discs, and disc bulges — such as lifting, carrying, pushing, pulling, handling, fingering, standing, sitting and walking — in light of specific medical evidence.

*2. Treatment of Opinion Evidence*

Plaintiff also contends that the ALJ failed to consider supportability and consistency factors with respect to medical opinions from Dr. Mikelis, Dr. Krishna, and Dr. Yevsikova. While the Court has discretion to disregard this argument, it is difficult to assess whether the ALJ's decision was based on substantial evidence without understanding how he analyzed supportability and consistency.

SSA regulations emphasize:

> The factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(2). The supportability factor "asks how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations," while the consistency factor recognizes that "the more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Evans v. Comm'r of Soc. Sec.*, No. 21-CV-4876 (AMD), 2023 WL 2667005, at *5 (E.D.N.Y. Mar. 28, 2023) (citation modified). Remand is required if an ALJ fails to "adequately 'explain the supportability or consistency factors, or bases [his] explanation upon a misreading of the record.'" *Id.* (quoting *Rivera v. Comm'r of Soc. Sec. Admin.*, No. 19-CV-4630, 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020)).

In this case, the ALJ failed to adequately discuss the supportability and consistency of medical opinions within the record. Additionally, when evaluating medical opinion evidence, the ALJ erred in other ways, including by: dismissing functional reports designed for the Workers Compensation Board; substituting his own judgment in the place of a competent medical expert; and/or failed to comply with the Appeals Council's remand order.

a) Dr. Dayan and Dr. Manvar's Opinions

It does not appear that the ALJ considered Dr. Dayan or Dr. Manvar's opinions at all, despite the fact that the former treated and observed Plaintiff from January 2016 to June 2018, and the latter treated Plaintiff between January 2016 to October 2019. *See* A.R. at 22 (stating that he "fully considered the medical opinions and prior administrative medical findings in [Plaintiff's] case as follows" and failing to mention Dr. Dayan or Dr. Manvar's opinions in the subsequent paragraphs).

Dr. Manvar consistently observed paraspinal spasms within Plaintiff's cervical and thoracic spine during her visits. *See, e.g.*, *id.* at 788, 793, 800. Additionally, in 2018, Dr. Dayan observed "[s]ubjective numbness in [Plaintiff's] left upper extremity," and he concluded that Plaintiff had reached "maximum medical improvement" and received a twenty percent loss of use in her left shoulder. *Id.* at 541–42, 545. Dr. Dayan's opinion about Plaintiff's percentage impairment was based on reduced range of motion in Plaintiff's left shoulder flexion and abduction, as well as her 2013 shoulder surgery. *See id.* at 544–45. The ALJ did not address any of these opinions directly. Rather, he noted:

> There are a number of notations in the record that describe the claimant as disabled on a percentage, fractional, temporary, permanent, mild, moderate, marked, or other vaguely phrased basis for worker's compensation purposes. These are assessments for a different administrative body, and were not framed as functional analyses. They are inherently neither valuable nor persuasive to our analysis.

*Id.* at 23.

SSA regulations required the ALJ to evaluate the medical opinions within the record — thus, he erred in neglecting to discuss Dr. Manvar and Dr. Dayan's opinions. *See* 20 C.F.R. § 404.1520c(a) ("When a medical source provides one or more medical opinions . . . we will consider those medical opinions . . . from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate."). To the extent that the ALJ dismissed Dr. Dayan's opinions because they were developed for the Workers Compensation Board, this was further error. His responsibility was not suspended simply because an opinion was reached in the context of a workers' compensation claim. While the ALJ was free to disregard conclusions of disability and depart from temporary disability percentage designations, "it is erroneous to assign 'little weight' to a functional assessment simply because it was rendered in the context of a workers' compensation claim." *See Fortuna v. Saul*, No. 19-CV-11066 (JCM), 2021 WL 961798, at *23 (S.D.N.Y. Mar. 15, 2021) (citation omitted). Thus, the ALJ erred in failing to consider and discuss Dr. Dayan and Dr. Manvar's opinions.

b) <u>Dr. Wert's Opinion</u>

The ALJ found Dr. Wert's opinion unpersuasive regarding the loss of use of Plaintiff's left shoulder, because they were "inconsistent with the opinion of Dr.

Urbaniak below, and not supported by consistently or significantly abnormal orthopedic examinations in the underlying record." A.R. at 23. Even if this suffices for a discussion of supportability and consistency factors, it appears that the ALJ may have both failed to comply with the remand order and impermissibly "substitute[d] his own expertise or view of the medical proof for . . . [a] competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015); *see Santiago v. Comm'r of Soc. Sec.*, No. 19-CV-4001 (KPF) (KNF), 2020 WL 6530884, at *6 (S.D.N.Y. May 5, 2020) (concluding that the ALJ improperly assumed the role of a medical expert by deeming plaintiff's back pain as not severe), *report and recommendation adopted*, 2020 WL 4463157 (Aug. 3, 2020).

Dr. Wert's opinion was based on range of motion limitations derived from his own orthopedic exams, as well as those performed by others. *See* A.R. at 704 (finding in April 2017 that Plaintiff's range of motion in her left arm revealed flexion to 130 degrees and abduction to 115 degrees (with 180 degrees being normal for both), internal and external rotation to 40 and 60 degrees (with 90 degrees being normal)), 709 (finding similar results in January 2018, except with abduction improved to 135 degrees, internal rotation improved to 70 degrees, and normal external rotation); *see also id.* at 589 (opinion by Dr. Rubinshteyn in March 2015 finding flexion and abduction to 75 degrees, internal rotation to 30 degrees, and external rotation to 40 degrees in Plaintiff's left arm).

While the ALJ was not obligated to adopt Dr. Wert's final opinion about the percent loss of use in Plaintiff's left arm — since this was estimated to support a

report to the Workers Compensation Board, *see Fortuna*, 2021 WL 961798, at *23 — he was not entitled to dismiss Dr. Wert's findings regarding her reduced range of motion. First, it is not clear how the ALJ concluded that Plaintiff lacked "significantly abnormal" exam results regarding her left arm. *See* A.R. at 23. Dr. Urbaniak discussed Dr. Yevsikova's finding of a full range of motion in May 2019, *see* A.R. at 651, but at no point did he, Dr. Wert, or Dr. Rubinshteyn describe Plaintiff's shoulder results as not "significantly abnormal." Second, the remand order instructed the ALJ to consider Plaintiff's maximum RFC "during the entire period at issue." *Id.* at 176. It is not clear that the ALJ followed this instruction, especially given his outsized focus on Dr. Yevsikova's May 2019 opinion, *see id.* at 133–34 ("That sounds -- does that sound like a shoulder that's okay? Is that right[?]"), and his lack of discussion of Dr. Wert's orthopedic findings.

For these reasons, the ALJ erred in concluding that Dr. Wert's opinions were "not generally persuasive" because they were "not supported by consistently or significantly abnormal orthopedic examinations in the underlying record." *Id.* at 23.

c) Dr. Mikelis's Opinion

The ALJ failed to discuss supportability and consistency factors with respect to Dr. Mikelis's opinion. He found it persuasive that Dr. Mikelis cautioned Plaintiff to "avoid activity that exacerbates her symptoms such as heavy lifting [and] carrying," since this was "consistent with the bulk of the opinion evidence." *Id.* However, he rejected a non-exertional limitation on Plaintiff's bending because it was "not sufficiently supported by the largely benign range of motion and strength testing

in the record." *Id.* This conclusory reasoning does not suffice as a supportability and consistency analysis and provides basis for remand. *See Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *13 (S.D.N.Y. Aug. 6, 2021) (concluding that simply stating an opinion is "supported by the medical evidence of record" is "an insufficient explanation of the supportability factor and is grounds for remand").

d) Dr. Krishna's Opinion

Dr. Krishna concluded that Plaintiff was only capable of sedentary work, but the ALJ found this opinion was "not consistent with most of the opinion evidence or supported by the claimant's clinical examinations, which show generally mild reductions to strength and range of motion, if any, and [was] not persuasive." A.R. at 23. The ALJ was not obligated to adopt Dr. Krishna's ultimate classification for Plaintiff's functional capacity, but he was not entitled to restrict his supportability and consistency analysis solely to this sedentary work determination. The ALJ highlighted Dr. Krishna's repeated findings of reduced range of motion in Plaintiff's spine and shoulder, reduced muscle strength in her left arm and leg, and decreased sensation in her left arm — without discussing the supportability or consistency of these opinions. *Id.* This was in error and provides further grounds for remand.

*3. Failure to Explain Listings Conclusions*

The ALJ is required to "explain why a claimant's condition does not satisfy [a] Listing" whenever "there is record evidence that appears to support a conclusion that most or all of the elements of a Listing are met." *Prieto*, 2021 WL 3475625, at *15. As mentioned above, the ALJ evaluated Listings 1.15, 1.16, and 1.18 by simply

reciting the definitions for each and concluding, "The claimant's impairment does not meet these conditions." A.R. at 19–20. This analysis is too conclusory to provide the Court with sufficient "basis on which to evaluate whether substantial evidence supported the ALJ's determination." *See Prieto*, 2021 WL 3475625, at *16 (remanding after the ALJ "merely wrote a conclusory statement that [the plaintiff] did not meet [the listed impairments], quoting portions of the Listings without any explanation"). It is especially concerning given that there is evidence to suggest that Plaintiff meets many of the requirements for Listing 1.18, *e.g.*, "documentation of chronic joint pain or stiffness, with abnormal motion, instability, or immobility of the affected joints, as well as anatomical abnormality noted on physical examination or imaging." *See* A.R. at 20. On remand, the ALJ must sufficiently explain why the Plaintiff's impairments failed to meet or equal the Listings.

**E. Remand to a Different ALJ**

Plaintiff argues that this case should be remanded for further proceedings before a different ALJ. Pl.'s Mot. at 20. Typically, this determination is reserved for the SSA Commissioner, but a district court can order a case to be assigned to a new ALJ where "the ALJ's conduct 'gave rise to serious concerns about the fundamental fairness of the disability review process.'" *Roberto v. Saul*, No. 20-CV-1923 (AMD), 2021 WL 3912298, at *8 (E.D.N.Y. Sep. 1, 2021) (citation modified) (quoting *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 292 (E.D.N.Y. 2004)).

Reassignment is not warranted where the ALJ has merely committed legal error. Instead, the court may direct reassignment only where additional factors are

present, including where the Court finds "(1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party; or (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party." *Id.* (quoting *Sutherland*, 322 F. Supp. 2d at 292).

Having considered the above factors in light of the administrative record, the Court declines to order the Commissioner to remand this case to a different ALJ. However, in light of the long history of Plaintiff's 2018 claim for benefits and the findings in this opinion, the Commissioner may wish to consider whether a discretionary reassignment to another ALJ would be appropriate.

**CONCLUSION**

For the reasons outlined above, the court grants Plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion. The Commissioner's decision is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

Dated: October 22, 2026
Brooklyn, New York

*/s/ Nina R. Morrison*
Nina R. Morrison
United States District Judge